UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                   :
**GEORGE E. HEEREMA,**             :   Civil Action No. 15-7252 (ES) (MAH)
                                   :
      **Plaintiff,**  :
                                   :
   v.                     :   OPINION
                                   :
**FORSTER, GARBUS & GARBUS, et al.,** :
                                   :
      **Defendants.** :
_____:

### I.    Introduction

This matter comes before the Court on Plaintiff George E. Heerema's motion to amend his Complaint to include additional facts in support of his claims brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"), and to add the three general partners of Forster, Garbus & Garbus ("FG&G") as Defendants, D.E. 25. The Court has considered the motion, opposition and applicable law. On January 18, 2018, the Court heard oral argument on the motion. For the reasons set forth herein, Plaintiff's motion to amend the Complaint is granted in part and denied in part.

### II.    Background

On October 1, 2015, Plaintiff filed a Class Action Complaint against Defendant FG&G, a collection law firm, and John Does 1-10. Complaint, Oct. 1, 2015, D.E. 1. Defendant was assigned to Plaintiff's account for the purpose of collecting a past-due debt that Plaintiff allegedly owed to Discover Bank. *Id.* at ¶¶ 13-18. In its attempt to collect the debt, Defendant mailed a collection letter to Plaintiff on or about October 2, 2014. *Id.* at ¶ 20. The initial Complaint alleges that Defendant violated the FDCPA by sending "debt collection letters to

Plaintiff and other New Jersey consumers on law firm letterhead without an attorney first exercising professional judgment by independently evaluating collection demands and determining that the proceedings to enforce collection are warranted," in violation of 15 U.S.C. §1692e, 15 U.S.C. §1692 e(2), 15 U.S.C. §1692 e(3) and 15 U.S.C. §1692f.  *Id.* at ¶ 2.  On November 9, 2015, Defendant filed its Answer to the Complaint.  Answer, Nov. 9, 2015, D.E. 6.

On June 9, 2016, the Court entered a Scheduling Order which set the close of all fact discovery for April 8, 2017, and January 6, 2017 as the date by which the parties were required to move to add new parties or amend pleadings.  Pretrial Scheduling Order, June 9, 2016, D.E. 12, at ¶¶ 3, 13.  By order entered by on October 17, 2016, the Court extended the deadline by which to file a motion to amend or add new parties to March 31, 2017.  Text Order, Oct. 17, 2016, D.E. 14.  On March 6, 2017, the Court entered an Amended Scheduling Order, extending the close of fact discovery to July 8, 2017.  Amended Scheduling Order, March 6, 2017, D.E. 20, ¶ 1.  On June 22, 2017, Plaintiff deposed Glenn Garbus, one of Defendant's partners, both in his individual capacity and as the Rule 30(b)(6) deponent of FG& G.  Memorandum in Opposition to Plaintiff's Motion to Amend, D.E. 29, at 5.

On September 22, 2017, Plaintiff moved to amend his Complaint, alleging that additional facts were uncovered during Glenn Garbus's deposition that necessitate Plaintiff's proposed amendment to the Complaint.  Plaintiff's Brief in Support of Motion to Amend, D.E. 25-2, at 2.  Specifically, Plaintiff maintains that he should be permitted to add factual allegations to the FDCPA claim, to include, in the alternative, that Defendant's October 2, 2014 letter to Plaintiff was false and misleading because it was confusing regarding whether and to what extent an attorney had reviewed Plaintiff's file and the letter sent to Plaintiff.  *Id.* at 6.  Plaintiff asserts that the letter was particularly misleading because one month after the

2

letter was sent to Plaintiff, the attorney who reviewed Plaintiff's file and caused the letter to be sent to Plaintiff filed a lawsuit against Plaintiff seeking to collect the alleged debt. Patel Declaration, ¶ 7. Plaintiff also seeks to name individual Defendants, Glenn Garbus, Mark Garbus and Ronald Forster, "given that Mr. Garbus testified that the firm is a general partnership and the three partners drafted the letter and the confusing and contradictory language of the letter at issue." *Id.* at 9-10.

Defendant opposes the amendment insofar as it would name Forster and the Garbuses as individual Defendants. Defendant argues that the three individuals will be prejudiced by the amendment at this late date, and that Plaintiff has failed to demonstrate good cause for amendment of the Complaint six months after the Court's deadline for doing so. Memorandum in Opposition to Plaintiff's Motion to Amend, D.E. 29, at 7-9. Defendant also argues that the amendments fail to plead any factual allegations specific to Forster or Mark Garbus. *Id.* While Defendant does not explicitly consent to amending the Complaint to add additional facts in support of Plaintiff's claims, its objection is not particularly strong either. Instead, Defendant states "insofar as such an amendment would require only limited additional discovery, [it] believes the case law weighs against it successfully opposing the amendment in this regard." *Id.* at 2. On January 18, 2018, the Court held oral argument on this motion.

**III.  Analysis**

The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so

requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).

### a. Rule 16(b)(4)

Given that Plaintiff's motion was filed after the March 31, 2017 deadline for the filing of motions to amend the pleadings set forth in the Court's October 17, 2016 Text Order, D.E. 14, the first question before the Court is whether good cause exists to adjust the deadline to permit Plaintiff to now file the instant motion.

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The requirement of a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); *see also Harrison*, 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling

deadlines have expired."). The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow its proposed amended pleading. *Prince v. Aiellos*, No. 09-5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010)); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting *Rent-A-Ctr. v. Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. Apr. 9, 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.'" *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 702 (E.D. Pa. Aug. 8, 2007); *see also* Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark*, No. 10-1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of

5

good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. *See Dimensional Commc'n., Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

While Plaintiff does not acknowledge the untimeliness of this motion or otherwise address specifically what good cause exists under Rule 16 to modify the Court's Order, Plaintiff does represent that he learned of the additional facts which would support a claim against the individual Defendants during the deposition of FG&G's 30(b)(6) witness, Glenn Garbus, on June 22, 2017. Plaintiff then sought leave of the Court to file the instant motion on August 21, 2017, when the settlement conference held in this matter proved unsuccessful.

The Court finds that Plaintiff has demonstrated good cause to modify the Court's March 31, 2017 deadline. While some details regarding Glenn Garbus's review of Plaintiff's file and the letter sent to Plaintiff on October 2, 2014 were available to Plaintiff when Defendant FG&G responded to Plaintiff's Interrogatory requests on October 24, 2016, the full extent of his review of Plaintiff's file prior to sending the October 2, 2014 letter did not become readily apparent to Plaintiff until the June 22, 2017 deposition. Indeed, Defendant acknowledges that both parties' responses to discovery requests were less than complete:

> Both Plaintiff and Defendant advised the other that the discovery responses were inadequate and after an exchange of letters the parties met on February 15, 2017 to address their respective issues. While there was discussion of amending each parties' responses, no amendments were made by either side.

Memorandum in Opposition to Plaintiff's Motion to Amend, D.E. 29, at 5. Therefore, the Court

concludes that Plaintiff exercised reasonable diligence in avoiding unnecessary delays when it sought leave to amend the Complaint shortly after the June 22, 2017 deposition. *See Globespan*, 2005 WL 1638136, at *3 ("A finding of good cause depends on the diligence of the moving party."). While "lack of prejudice to the nonmovant does not show good cause," the Court finds that, when taken in conjunction with the diligence demonstrated by plaintiff in timely filing, there is sufficient "good cause" pursuant to Rule 16(b)(4) for the Court to grant leave for Plaintiffs to amend. *See Marlowe Patent Holdings LLC v. Dice Elecs., LLC*, No. 10-1199, 2013 WL 775764, at *12 (D.N.J. Feb. 27, 2013).

      b. **Rule 15(a)(2)**

Under Rule 15(a)(2), a plaintiff may amend his complaint "when justice so requires." The Court may deny a motion to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint . . . such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment."). Here, FG&G alleges that the Court should deny Heerema's motion because of undue delay and prejudice, as well as futility of the amendment.

    **1. Futility**

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Am. Corporate Society v. Valley Forge Ins. Co.*, 424 F. App'x 86, 90 (3d Cir. 2011) (quoting

Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007)); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (3d ed. 2010).

To determine whether an amendment would be "properly dismissed," the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Harrison Beverage*, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. *Fowler*, 578 F.3d at 210 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler*, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3rd Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether a plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Fowler*,

578 F.3d at 211.  As the United States Supreme Court instructed in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  556 U.S. at 678.  The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct."  *Id.* at 678–79 (citations omitted) (internal quotation marks omitted).  This "context-specific task . . . requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

A court conducting a futility analysis based only upon the sufficiency of the pleading must consider a limited record.  Specifically, a court may consider only the proposed pleading, exhibits attached to that pleading, matters of public record, and undisputedly authentic documents provided the claims are based on those documents.  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *accord West Penn*, 627 F.3d at 97 n.6 (reiterating the rule and its limited exception for documents that are "integral or explicitly relied upon in the complaint").

Plaintiff's claims against Defendants Mark Garbus and Ronald Forster are futile.  The proposed amended Complaint is deficient for several reasons.  It merely generally alleges that FG&G drafted the form letter (¶ 31).  It fails to allege Mark Garbus or Forster had any involvement in the letter sent to Plaintiff Heerema.  It does not allege Mark Garbus or Forster reviewed Plaintiff's Discover file.  It also does not allege that Mark Garbus or Forster reviewed the letter sent to Plaintiff before it was sent to Plaintiff.  Nowhere does it allege that Mark Garbus or Forster caused the letter to be sent to Plaintiff.  Nor could Plaintiff credibly allege that level involvement by Mark Garbus or Forster.

At his deposition, Glenn Garbus testified that once he received Plaintiff's file from Discover, he would have spent five minutes or so reviewing the file. G. Garbus Dep., D.E. 25-6, at 59:3-13. If he determined after that review that there are no issues or questions with the file, he approved the file to be placed into production and the letter was sent out. *Id.* at 59:15-21. The letter is sent only upon his approval. *Id.* at 60:1-5. Once Glenn Garbus reviewed the file and approved it, he caused the computer program to send the letter to Plaintiff. *Id.* at 60:1-11. Glenn Garbus testified that he is the only one in the office who ever approved these files. *Id.* at 60:12-61:7. A file would not be sent to a collector until Glenn Garbus had already reviewed and approved the account. *Id.* at 61:17-18.

It is true, as Plaintiff's counsel pointed out at Oral Argument, that Glenn Garbus testified that he and his partners included in the generic draft of the letter, the statement "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account." G. Garbus Dep., D.E. 25-6, at 64:20-64:24. But Glenn Garbus there was describing the drafting of the form letter, not the specific letter that was sent to Plaintiff. That is hardly sufficient to ascribe responsibility for Plaintiff's file to Mark Garbus or Forster.

Defendant argues that language regarding attorney involvement similar to that used in the letter at issue here has already passed legal muster in several cases, including *Greco v. Trauner, Cohen & Thomas*, L.L. P., 412 F.3d 360 (2d Cir. 2005), *Eddis v. Midland Funding LLC*, 2012 U.S. Dist. LEXIS 22193 (D.N.J. Feb. 22, 2012), and *Powell v. Aldous & Assocs.*, 2018 U.S. Dist. LEXIS 982 (D.N.J. Jan. 3, 2018).

In *Greco*, the relevant language stated "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account." *Greco*, 412 F.3d at 361. Plaintiff argued that language, when taken with the language that "if you fail to contact this

office, our client may consider additional remedies to recover the balance due," suggested that an attorney had reviewed the account and counseled the client to initiate a collection lawsuit. The district court ruled, and the Second Circuit agreed, that even the least sophisticated consumer would understand that language to mean that "no attorney had specifically examined the recipient's account information. . . ." *Id.* at 362. The Second Circuit reiterated that "[o]ne cannot, consistent with FDCPA, mislead the debtor regarding meaningful 'attorney' involvement in the debt collection process." *Id.* at 364. But the Second Circuit concluded the letter's language made clear that which was, apparently the case, that there had been no attorney view or evaluation. *Id.* at 364-65.

In *Eddis v. Midland Funding*, the letter stated in pertinent part that "[a]t this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due." *Eddis*, 2012 U.S. Dist. LEXIS 22193, at *3 (D.N.J. Feb. 22, 2012). The Plaintiff claimed the letter would mislead the least sophisticated consumer as the extent of attorney involvement, when there was no or minimal attorney involvement. Relying in part on the Third Circuit's decision in *Lesher v. Law Offices of Mitchell Kay PC*, 650 F.3d 993 (3d Cir. 2011) and the Second Circuit's decisions in *Greco* and *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993), the court noted that "certain courts have recognized that a debt collection letter that was not reviewed by a lawyer and sent on law firm letterhead might not fall afoul of § 1692e(3), provided that the letter contains a satisfactory disclaimer." *Id.* at *18-19. The court found that the language sufficiently conveyed, to the least sophisticated debtor, that an attorney had not reviewed the account. Further, the court concluded that, unlike *Lesher*, the pertinent language appeared on the front of the letter, the letter "has not made a false representation or implication

11

that the letter is from an attorney with meaningful involvement as an attorney in the debtor's case." *Id.* at *24.

In *Powell v. Aldous & Assocs.*, 2018 U.S. Dist. LEXIS 982 (D.N.J. Jan. 3, 2018), the court dismissed § 1692e claims alleging that the debt collection letter created the misimpression of attorney involvement when in fact there was none. Like *Eddis*, the letter stated that "[a]t this time, not [sic] attorney has reviewed the particular circumstances of your account." *Id.* at 3. As did the court in *Eddis*, the Powell court concluded that language was sufficient to avert any confusion in the mind of the least sophisticated debtor that an attorney had reviewed the account. *Id.* at *16-17. The court concluded that the language was sufficiently clear, it was in bold normal-sized print, on the front page, set off in its own paragraph. *Id.*

The foregoing cases addressed the concern that a collection agency not mislead or coerce the least sophisticated debtor into believing that an attorney was involved and therefore that debtor had better pay up, lest he or she face further legal action.

Plaintiff's theory here is quite the opposite. Plaintiff now seeks to contend that Defendant misrepresented that an attorney was not involved, when in fact one was. And when he did not promptly pay, a collection lawsuit was initiated against him only one month later.

There is little precedent for § 1692e claims predicated on an assertion that the Defendant underrepresented the level of attorney involvement. Certainly, the parties have not presented any in their initial briefing. For that reason, the Court ordered the parties to submit additional briefing on precedent for this type of claim. *See* Order, Jan. 22, 2018, D.E. 33. Indeed, the parties' additional briefing demonstrates that neither party was able to uncover any case with a factual scenario similar to the one currently before the Court.[1]

---

[1] While Plaintiff was unable to locate case law similar to the facts of this matter, Plaintiff

12

But § 1692e does not necessarily proscribe such a theory. In fact, the plain text of § 1692e does not qualify what constitutes a "false, deceptive, or misleading representation." To the contrary, it provides specific instances that constitute violations, but it expressly does so

---

presented additional case law to support his position that Glenn Garbus conducted meaningful attorney review and that disclaiming that review violated the FDCPA. Plaintiff's Brief in Further Support of Motion to Amend the Complaint, Feb. 5, 2018, D.E. 34. Plaintiff cites cases which describe what constitutes meaningful attorney review. *See Nielsen v. Dickerson*, 307 F.3d 623, 635-37 (7th Cir. 2002) (in finding that the attorney's review of the debtor's file was merely ministerial, the Court held that a "letter that is issued on an attorney's letterhead and over his signature conveys the notion that the attorney has 'directly controlled or supervised the process through which the letter was sent[,]'" and "implies that the attorney has reached a considered, professional judgment that the debtor is delinquent."); *Miller v. Upton*, 687 F. Supp.2d 86, 88 (E.D.N.Y. 2009) (concluding that what constitutes meaningful attorney review must be analyzed on a case by case basis). The most significant cases cited by Plaintiff are those which establish that "attorneys wearing their debt-collector hats run afoul of the FDCPA when their collection letters either create ambiguity or do not dispel the inherent ambiguity in debt collection letters appearing on attorney letterhead." *Spurgeon v. Frederick J. Hanna & Assocs., P.C.*, No. 4:14-CV-3098, 2015 U.S. Dist. LEXIS 32578, at *9-10 (D. Neb. Mar. 17, 2015). The Court in *Spurgeon* noted that the ambiguity can occur when the attorney's letter to the debtor contains "inconsistent messages which fostered, rather than quelled, ambiguity in the sender's role; or when the letter omitted information about the true nature of the attorney's or law firm's role in the collection process." *Id.* at 10; *see also Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp.2d 293, 301-02 (E.D.N.Y. 2005) (finding that where the content of the letter and the disclaimer contradict each other regarding whether the attorney has conducted a meaningful review, the letter is deceptive because the letter can reasonably be understood to have two different meanings, only one of which can be true).

Defendant also was unable to uncover a single case where the collection letter disclaimed meaningful attorney review when in fact the attorney had in fact conducted a meaningful review of the debtor's file before sending a collection letter. Forster, Garbus & Garbus's Supplemental Memorandum in Opposition to Plaintiff's Motion to Amend the Complaint, Feb. 19, 2018, D.E. 35. Nonetheless, Defendant submitted a case recently decided by Magistrate Judge Mannion, in which his Honor denied Plaintiff's motion to amend the complaint where the original Complaint contained allegations similar to those in the instant original Complaint and sought an amendment similar to that sought here. *See Mendoza v. Forster, Garbus & Garbus*, 2:16-cv-1901-SDW-SCM, 2018 U.S. Dist. LEXIS 20781 (D.N.J. Feb. 8, 2018). The Court in that case denied the amendment, however, finding that Plaintiff had failed to establish good cause for amending the scheduling order under Fed. R. Civ. P. 16. Here, the Court has already determined that Plaintiff has established good cause.

"[w]ithout limiting the general application" of its prohibition on the use of misleading statements to collect a debt."

For purposes of this case, perhaps the court in *Smith v. Harrison*, 2008 U.S. Dist. LEXIS 51685, *3 (D.N.J. July 7, 2008) explained it best:

> When an attorney sends a debt collection letter to the least sophisticated debtor, the question in the debtor's mind is whether the attorney has in fact reviewed his account and to what degree. To answer that question, the letter should state simply that no attorney has reviewed the debtor's account or if an attorney has reviewed that account, to what degree.

Accordingly, the Court finds that it would be futile to permit Plaintiff to amend the Complaint to add Ronald Forster and Mark Garbus as Defendants. However, the same cannot be said for naming Glenn Garbus, as he has testified at length to his involvement in reviewing Plaintiff's file and sending the letter to Plaintiff, as well as his involvement in initiating the litigation against Plaintiff, a month later. Similarly, the Court finds that it would not be futile to permit Plaintiff to amend the Complaint to add additional facts in support of Plaintiff's FDCPA claim.

**2. Prejudice**

Defendant argues that it, as well as the three proposed individual Defendants, will be substantially prejudiced if Plaintiff's motion for leave to amend were granted because introducing new parties will force significant additional discovery with additional costs. Memorandum in Opposition to Plaintiff's Motion to Amend, D.E. 29, at 7-9. Defendant maintains that in the more than two years that this case has been ongoing, Plaintiff never once indicated that it might seek to name individual defendants and that naming the individuals would place different facts at issue on which no discovery has ever been taken or contemplated. *Id.* at 7.

Plaintiff argues that Defendant and the proposed Defendants cannot show any potential for prejudice because there are no new legal issues and the addition of the individual Defendants only relate to original facts that were known for some time. Plaintiff's Brief in Support of Motion to Amend, D.E. 25-2, at 10-12. Plaintiff claims therefore that any additional discovery will be minimal. *Id.* at 11.

The Court need not address prejudice as to Mark Garbus and Ronald Forster, as the Court has already determined that any such amendment against them would be futile.

Defendant's argument that it and Glenn Garbus will suffer prejudice if Plaintiff is permitted to amend falls flat. Defendant's argument that Glenn Garbus will require new discovery is unsupported. The allegations against Glenn Garbus are essentially based on the same set of circumstances that has existed from the outset of this case. Defendant does not indicate what new discovery Glenn Garbus would require. It is unclear to the Court what discovery he, or Defendant FG&G, would require that has not already been covered. Presumably, Glenn Garbus knows his own level of involvement in this case, and his involvement is the type of information that is uniquely within his knowledge. Therefore, the Court finds that Defendant FG&G and Glenn Garbus will not suffer prejudice by permitting Plaintiff to amend his Complaint at this time.

### IV. Conclusion

For the reasons stated herein, Plaintiff's motion to amend the Complaint, D.E. 25, is granted in part and denied in part. The Court will issue an order consistent with this Opinion.

*s/ Michael A. Hammer*_____
**UNITED STATES MAGISTRATE JUDGE**

Date: April 17, 2018