Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GEORGE E. HEEREMA,**<br><br>Plaintiff,<br><br>v.<br><br>**FORSTER, GARBUS & GARBUS and GLENN S. GARBUS,**<br><br>Defendants. | Civil Action No. 15-07252 (ES) (MAH)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is a motion for summary judgment filed by Defendants Forster, Garbus & Garbus ("FG&G") and Glenn S. Garbus ("Garbus"). (D.E. No. 73). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court GRANTS Defendants' motion and enters judgment in their favor.

I.  BACKGROUND[1]

FG&G is a law firm that also acts as a debt collector. (Defs.' SUMF ¶¶ 2–3; Pl.'s Resp. ¶¶ 2–3). On October 2, 2014, FG&G was assigned to collect a credit card debt by Discover Bank on which Plaintiff George E. Heerema had allegedly defaulted. (Defs.' SUMF ¶¶ 1–2; Pl.'s Resp. ¶¶ 1–2). Later that day, FG&G sent the following collection letter to Plaintiff:

Dear George E. Heerema,

---

[1] The Court gathers the factual background from Defendants' statement of undisputed material facts (D.E. No. 73-1 ("Defs.' SUMF")) and Plaintiff's response to same (D.E. No. 74-1 ("Pl.'s Resp.")). The Court also relies on the October 2, 2014 collection letter that spawned this litigation. (D.E. No. 38, First Amended Complaint ("FAC"), Ex. A ("Collection Letter")). The Court has also relied on Plaintiff's supplemental statement of disputed material facts (D.E. No. 74-2), but the Court has elected not to cite it because it relies almost exclusively on Garbus's deposition transcript, which the Court cites directly below (D.E. No. 74-4, Deposition of Glenn S. Garbus, June 22, 2017 ("Garbus Dep.")).

1

> This is to notify you that Discover Bank has retained this firm to collect its claim against you for the balance owing on your Discover Card account.
>
> At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. At this time, no determination has been made as to whether a lawsuit will be commenced.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> Please note that we are required, under federal law, to advise you that we are debt collectors and any information we obtain will be used in attempting to collect this debt.
>
> Please mail all correspondence and payments to the address listed below.

(Collection Letter). At the top, right-hand corner of the collection letter was the following letterhead:

> ***FORSTER, GARBUS & GARBUS***
> ***Attorneys at Law***
> Ronald Forster Adm in NY Only
> Mark A Garbus Adm in NY Only
> Glenn S Garbus Adm in NJ, CT & NY

(*Id.*; Defs.' SUMF ¶¶ 3–4; Pl.'s Resp. ¶¶ 3–4).

On October 1, 2015, Plaintiff sued FG&G, claiming that the above collection letter violated various provisions of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), because it falsely suggested—by displaying FG&G's law firm letterhead—that an attorney

reviewed, evaluated, and exercised professional judgment concerning the accuracy and merits of Plaintiff's particular debt, before sending the letter. (D.E. No. 1, ¶¶ 2, 29, 34, & 65).

During discovery, however, Plaintiff uncovered that an attorney—namely, Glenn S. Garbus, a partner at FG&G who is licensed to practice law in the State of New Jersey—may have actually reviewed his debt before the letter was sent. The Court will outline how Plaintiff uncovered that possibility *infra*. It suffices to say here that based on this discovery Plaintiff moved to amend his complaint on September 22, 2017, seeking to add Garbus as a defendant and to add a claim that the collection letter falsely represented that an attorney did *not* review the particular circumstances of Plaintiff's debt when Garbus did so. (D.E. No. 25). The Honorable Judge Michael A. Hammer granted the motion on April 17, 2018 (D.E. Nos. 36–37), and Plaintiff filed the amended complaint on April 30, 2018, asserting the new claim (FAC ¶ 32). Plaintiff also continues to pursue his original claim in the alternative. (*Id.* ¶ 33).

On January 11, 2019, Plaintiff moved for summary judgment.[2] (D.E. No. 46). The Court denied Plaintiff's motion for failure to establish that he was a "consumer" or that the obligation at issue was a "debt" as defined by the FDCPA. (D.E. No. 65). Defendants have now separately moved for summary judgment. (D.E. No. 73; *see also* D.E. No. 73-2, Moving Brief ("Mov. Br.")).

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when—in viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant—a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[2] Plaintiff also moved for class certification on January 11, 2019, but withdrew the motion on March 29, 2019. (D.E. Nos. 48 & 60).

(1986). The movant bears the burden of establishing that no "genuine issue" of facts exists. *Aman v. Cort Furniture Rental Cop.*, 85 F.3d 1074, 1080 (3d Cir. 1996).

A "party opposing summary judgment may not rest upon the mere allegations or denials of the . . . pleading[s.]" *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating, Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citing *Anderson*, 477 U.S. at 255).

### III.   DISCUSSION

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "To prevail on an FDCPA claim, a plaintiff must prove that (1) []he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

For purposes of their motion, Defendants do not dispute the first three elements of Plaintiff's claims. (Defs.' SUMF ¶¶ 9–11; Pl.'s Resp. ¶¶ 9–11). Therefore, the Court only

discusses the fourth element. While Plaintiff claims the collection letter violated various sections of the FDCPA,[3] Plaintiff does not suggest that either of his claims can proceed if a reasonable jury could not find the collection letter false or misleading. On this issue, and as explained above, Plaintiff claims that the collection letter *either* (i) falsely implied—by displaying FG&G's law firm letterhead—that an attorney reviewed his particular debt; or (ii) misrepresented that an attorney did *not* review his particular debt when one did so. The Court addresses both claims in turn.

### A. Misleading Implication Claim

For Plaintiff's first (and original) claim—that the collection letter's letterhead falsely implied that an attorney reviewed his debt when one did not do so—the Court assumes that an attorney did not review his debt.[4] Defendants argues that the collection letter's disclaimer—"At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. At this time, no determination has been made as to whether a lawsuit will be commenced"—dispelled any implication from the letterhead that an attorney reviewed his debt. (Mov. Br. at 9–13). Plaintiff responds that FG&G's letterhead caused him to believe that an attorney reviewed his debt and sent the letter to him as an attorney and not as a debt collector, and further that the disclaimer was insufficient to dispel that belief. (D.E. No. 74 ("Opp. Br.") at 17–20).

---

[3] Those sections were (i) § 1692e, which generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt"; (ii) § 1692e(2)(A), which specifically prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt"; (iii) § 1692e(3), which specifically prohibits a debt collector from falsely representing or implying "that any individual is an attorney or that any communication is from an attorney"; (iv) § 1692e(10), which specifically prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"; and (v) § 1692f, which generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." (*See* FAC ¶ 62).

[4] As explained below, that assumption is correct, at least based on what a jury could reasonably find on this record.

The Court analyzes the collection letter "from the perspective of the least sophisticated debtor." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006).[5] "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (quoting *Brown*, 464 F.3d at 453). But while gullible and shrewd, the least sophisticated debtor does not subscribe to "bizarre or idiosyncratic interpretations of collection notices" and is charged with a "quotient of reasonableness" consistent with "a basic level of understanding and willingness to read with care." *Hopkins*, 994 F.3d at 122 (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000)).

A collection letter may not, consistent with the FDCPA, "falsely imply that an attorney, acting as an attorney, is involved in collecting [a] debt." *Lesher*, 650 F.3d at 1003. The reason is that "the title of 'attorney'" suggests "authority" that causes consumers "to more quickly react to an attorney's threat than to one coming from a debt collection agency" because the "letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action." *Id.* at 1000 (quoting *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996)). Said another way, an attorney's letter conveys to the consumer that "the price of poker has just gone up." *Id.* (quoting *Avila*, 84 F.3d at 229).

But that does not mean an attorney cannot participate in collecting a debt. *Id.* at 1001. Instead, it means the attorney must clearly convey to the least sophisticated debtor "that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney." *Id.* (quoting *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 364 (2d Cir. 2005)).

---

[5] While courts sometimes refer to this standard as the "least sophisticated consumer" or the "unsophisticated debtor," the same underlying principles apply. *See Hopkins v. Collecto, Inc.*, 994 F.3d 117, 121 (3d Cir. 2021).

For example, in *Greco*, 412 F.3d 360, the Second Circuit reviewed a similar debt collection letter to the one at issue in this case and held that the letter's "clear disclaimer explaining the limited extent of [the defendants'] involvement in the collection of [the plaintiff's] debt" sufficiently dispelled any false implication concerning a level of attorney involvement. *Id.* at 365. On the front page, the letter "stated that although 'this office represents the above named BANK OF AMERICA' in the collection of [the plaintiff's] debt, '[a]t this time, *no attorney with this firm has personally reviewed the particular circumstances of your account*.'" *Id.* (emphasis added to the collection letter in *Greco*). "Nothing else in the letter," the Second Circuit explained, "confused or contravened this disclaimer of attorney involvement." *Id.* Thus, the Second Circuit found, "the least sophisticated consumer, upon reading this letter, must be taken to understand that no attorney had yet evaluated his or her case, or made recommendations regarding the validity of the creditor's claims." *Id.* Accordingly, the Second Circuit held that summary judgment in favor of the defendants was proper. *Id.*

In *Lesher*, 650 F.3d 993, by contrast, the Third Circuit analyzed a disclaimer similar to the one from *Greco* but came to a different conclusion. *Id.* at 1003. The disclaimer stated that, "[a]t this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account." *Id.* at 995. However, according to the Third Circuit, this disclaimer "d[id] little to clarify the [law firm's] role in collecting the debt because it completely contradict[ed] the message sent on the front of the letters—that the creditor retained a law firm to collect the debt." *Id.* at 1003. The Third Circuit distinguished *Greco* based on the position and context of the disclaimer: Whereas the disclaimer in *Greco* was on the front of the letter, the disclaimer in *Lesher* was on the back of the letter and accompanied by other legalese—specifically, four other notices. *Id.* at 995, 1002, 1003 n.11 (citing *Gonzalez v. Kay*, 577 F.3d 600, 607 (5th Cir. 2009) (reviewing

7

an identical collection letter from the same law firm as in *Lesher* and distinguishing *Greco* on the same basis)). The Third Circuit explicitly declined to say "whether an attorney debt-collector who sends out a collection letter on attorney letterhead might, under appropriate circumstances, comply with the strictures of the Act by including language that makes clear that the attorney was not, at the time of the letter's transmission, acting in any legal capacity." *Id.* at 1003.

The Third Circuit later addressed the issue in an unreported case, *Powell v. Aldous & Assocs., P.L.L.C.*, 762 F. App'x 127 (3d Cir. 2019). There, the Third Circuit analyzed a collection letter that used a law firm's letterhead but contained the following disclaimers on the front page of the letter after the signature block:

> **THIS IS AN ATTEMPT TO COLLECT A DEBT: ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**
>
> **At this time, not [sic] attorney with this firm has personally reviewed the particular circumstances of your account.**

*Id.* at 128. The Third Circuit noted that, while the location of the disclaimers on the front page was not dispositive, the letter in its "totality" provided a "sufficient" disclaimer "to dispel the impression of meaningful attorney involvement." *Id.* at 130. That was so, the Third Circuit explained, because "(a) the disclaimer is (i) in a bold, normal size font, (ii) located on the front of a one-page letter, (iii) set apart in a separate paragraph, and (b) the letter is not signed by an attorney." *Id.*

Here, in its entirety, FG&G's collection letter negates any impression of attorney review. The collection letter clearly and conspicuously disclaims: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. At this time, no determination has been made as to whether a lawsuit will be commenced." (Collection Letter).

8

Just as in *Powell*, the disclaimer is in normal sized font and located on the front page of the collection letter, in a separate paragraph; the letter is not signed by an attorney; and the letter clearly conveys it is from a debt collector by stating "we are debt collectors and any information we obtain will be used in attempting to collect this debt." (*Id.*). While this last disclaimer—that the letter is from a debt collector—does not alone "nullify[] any implication that the letter is from an attorney," *Lesher*, 650 F.3d at 1003 (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008)), such a disclaimer is not irrelevant under the totality of the circumstances, *see Daniels v. Solomon & Solomon P.C.*, 751 F. App'x 254, 257 (3d Cir. 2018) ("Unlike the cases [the plaintiff] relies upon, the letter here bears no attorney's signature. It also contains a disclaimer stating that the communication was sent by a debt collector. As the District Court observed, a debt collection letter not reviewed by an attorney but sent on law firm letterhead may not violate the FDCPA if the letter contains a proper disclaimer.").

Plaintiff argues that the only difference between the collection letter here and the one in *Lesher* is that the disclaimer here appears on the front page and not the back. (Opp. Br. at 17–19). But unlike the collection letter in *Lesher*, FG&G's disclaimer is not surrounded by excessive legalese (*e.g.*, four notices), and it does not contradict other statements made in the letter. While the letterhead states FG&G is a group of "***Attorneys at Law***," attorneys may work in multiple capacities—as both debt collectors and attorneys—and the letter does not indicate that anyone drafted it in his or her capacity as an attorney. (*See* Collection Letter). Plaintiff also generally argues that the least sophisticated consumer would be misled by FG&G's letterhead despite the clear, unambiguous, and conspicuous disclaimer discussed above. (Opp. Br. at 20). However, it is well settled that the least sophisticated consumer does not subscribe to "bizarre or idiosyncratic interpretations of collection notices" and is charged with a "quotient of reasonableness" consistent

with "a basic level of understanding and willingness to read with care." *Hopkins*, 994 F.3d at 122 (quoting *Wilson*, 225 F.3d at 354–55). Based on the collection letter in its totality, Plaintiff's interpretation is unreasonable: His interpretation suggests that the least sophisticated consumer would either disbelieve the disclaimer or not understand it despite its clarity.

Accordingly, the least sophisticated debtor would understand the collection letter's disclaimer to negate any implication that an attorney had reviewed Plaintiff's debt.

### B. Misrepresentation Claim

Plaintiff's second claim is that the collection letter falsely represented that an attorney did not review his particular debt when one did so. The Court will first outline the additional facts giving rise to this claim.

On June 22, 2017, Glenn S. Garbus was deposed as FG&G's deponent under Fed. R. Civ. P. 30(b)(6). Garbus is an FG&G partner who is licensed to practice law in the State of New Jersey. Plaintiff's counsel asked him to "describe . . . the process whereby [the collection letter] would have gone out to [Plaintiff]." (Garbus Dep. at 37:7–9). Garbus answered that, upon receiving the file, it "get[s] loaded onto our system" and the system "puts the account through at least six different scrubs" to (i) check whether the debtor is deceased; (ii) check whether the debtor is active military, (iii) check the debtor's bankruptcy status, (iv) verify the debtor's address, and (v) check whether the statute of limitations has run. (*Id.* at 37:10–38:5). Garbus further testified that, "[i]f all of those things are satisfied," "the account would be clear to go further" and "would then be put in my attorney review cycle." (*Id.* at 38:5–9).

An initial file, such as Plaintiff's file, Garbus testified, contained biographical information including his name, address, social security number, as well as information regarding the debt, default date amounts, and when the account was opened. (*Id.* at 38:13–16). Garbus further

testified that different clients, such as Discover Bank, may have "different requirements as to what they want [him] to review and what they have available for [him] to review per the file." (*Id.* at 38:10–13). In particular, Discover Bank requires him to review "a charge-off statement," "a transaction statement," and "the terms and conditions." (*Id.* at 38:17–20). Garbus testified that he has "a staff member who will make sure that at least those three documents are attached to th[e] file," and "[o]nce she secures [the documents], then she'll forward that account for [Garbus] to review the file." (*Id.* at 38:20–24).

Garbus testified that he will then "review the documents, and then approve [the file] or not approve it to go into collections, and then [the collection letter] will get produced." (*Id.* at 38:24–39:2). He reviews the documents, he said, to "[s]ee if [the file] makes sense," and a file may not make sense if it is missing information, if it reflects a zero balance, if someone else's name is on the terms and conditions, or if the creditor is a different institution. (*Id.* at 57:22–59:2). Reviewing a file, such as Plaintiff's file, could take about "five minutes," Garbus testified, but it "could be more," depending on "how many statement[s] [were] sent." (*Id.* at 59:11–12). Garbus testified that he did not "remember [Plaintiff's] case," so he could not say how long it took him to review Plaintiff's account. (*Id.* at 59:13).

Garbus also testified that he includes the disclaimer—that no attorney personally reviewed the particular circumstances of the account—in every letter "to tell the . . . consumer[] that we didn't decide to sue them or not," and that "I haven't . . . looked at [the account] with a critical eye." (*Id.* at 65:9–21). All he had done by that point, he said, was a "cursory review" of the account. (*Id.* at 65:13).

In moving for summary judgment, Defendants submitted evidence suggesting that Garbus did not actually "review the charge off statement or any other statements" before approving the

11

collection letter. (Defs.' SUMF ¶ 6). That evidence consists of an affidavit of Garbus dated February 20, 2019 (D.E. No. 73-3 ("Garbus Aff.")) and FG&G's notes for Plaintiff's account (D.E. No. 73-5, Exhibit B, Account Notes ("A/N")).

In his affidavit, Garbus explains that his deposition testimony was based on FG&G's practice at the time of his deposition in 2017, which was to review certain account statements pursuant to Discover Bank's preferences. (Garbus Aff. ¶¶ 3–4). In other words, his deposition testimony was *not* based on FG&G's practice in 2014—which is when Discover Bank assigned Plaintiff's account to FG&G. (*Id.* ¶ 3).

The account notes corroborate this explanation, Garbus says, because they show that FG&G did not receive the relevant account statements from Discover Bank *until after* Garbus approved the collection letter. (*Id.* ¶¶ 6–8). Specifically, the account notes show (i) that FG&G received Plaintiff's file from Discover Bank on October 2, 2014, and scrubbed the file for bankruptcy filings, military status, and death at 11:28 a.m. that same day (A/N lines 1–3); (ii) that Garbus approved the collection letter almost an hour later (A/N line 6); and (iii) that Discover Bank did not send, and FG&G did not receive, the charge-off statement until October 14, 2014, and the transaction statements until October 28, 2014 (A/N lines 25 & 33). Garbus further attests that, "[h]ad Plaintiff's counsel shown me the account notes and had me simply go through them . . . , the chances for any confusion would have been alleviated and an accurate depiction of what took place prior to sending the initial letter on October 2, 2014 would have been preserved." (Garbus Aff. ¶ 9). His "testimony" thus "did not accurately reflect what actually happened on Plaintiff's file but rather what [he] assumed would have happened." (*Id.* ¶ 4).

Plaintiff argues that the Court should disregard Garbus's affidavit because it is "self-serving" and because it impermissibly recants Garbus's prior deposition testimony. (Opp. Br. at

12

15–16 (citing *United States v. Commander*, 734 F. App'x 824, 831 (3d Cir. 2018))). Plaintiff urges the Court to rely only on Garbus's deposition testimony, which indicates that he would have reviewed the charge-off statement, transaction statement, and credit card terms and conditions of Plaintiff's account before approving the collection letter. (*Id.* at 6–7). Defendants, meanwhile, argue that Garbus sufficiently supported his more recent account with "specific facts and documentary" evidence. (Reply at 7).

However, the parties' dispute concerning the affidavit is immaterial. Indeed, with or without the affidavit, Defendants are entitled to summary judgment. The Court therefore will ignore the affidavit.

But not the account notes. Plaintiff disputes neither their authenticity nor what they show, and the account notes are consistent with Garbus's deposition testimony. In his deposition, Garbus testified hypothetically—about what he *would have* done before approving a collection letter. Plaintiff's counsel, indeed, asked Garbus "what *would have* been in, for example, [Plaintiff's] file?" (*Id.* at 40:11–12 (emphasis added)). Counsel asked, "Why don't you describe for me the process whereby this collection letter *would have* gone out to [Plaintiff?]" (*Id.* at 37:7–9 (emphasis added)). When counsel asked Garbus how long he "*would have* spent reviewing [Plaintiff's] file," Garbus responded: "*Could be* five minutes, *could be* more. Depends how many statements they would have sent. Like I said, *I don't specifically remember his case*." (*Id.* at 59:8–13 (emphasis added)). Meanwhile, the account notes indicate that FG&G did not receive the charge-off statement and transaction statements until *after* Garbus approved the collection letter. (A/N lines 1–3, 6, 25 & 33). Garbus could not possibly have reviewed statements he did not have. So, while

13

Garbus posited what would have happened, the account notes indicate what could not have happened.[6]

Thus, based on the record evidence, there is no genuine dispute of fact regarding Garbus's actual review of Plaintiff's account. Specifically, before FG&G sent the collection letter to Plaintiff, FG&G's computer system scrubbed his account for bankruptcy filings, military status, and death (A/N lines 1–3); and Garbus then reviewed Plaintiff's initial file and indicated his approval in the computer system (A/N line 6). Plaintiff's initial file included biographical information such as his name, address, and social security number, and possibly limited information concerning the debt. (Garbus Dep. at 38:13–16 & 40:13–18). There is no evidence that Garbus actually reviewed the charge-off statement or the transaction statements of Plaintiff's account before approving the collection letter. While Garbus's deposition testimony suggests he would have done so, the account notes indicate he could not have done so because FG&G received those statements only *after* he approved the collection letter. (A/N lines 25 & 33).[7]

Plaintiff argues that, "[e]ven if Attorney Garbus had not reviewed the (1) charge off statement, (2) the date of Plaintiff's last payment and (3) Plaintiff's Discover card statements, Attorney Garbus still had conducted a meaningful review prior to the letter being sent." (Opp. Br.

---

[6] Plaintiff disputes that Garbus was unaware of the account notes during his deposition, that he was testifying from memory, and that his testimony was hypothetical. (Opp. Br. at 7–15). These disputes are based on the contentions (i) that Garbus had access to the account notes before his deposition and (ii) that he was designated under Rule 30(6) and, therefore, as a person familiar with Plaintiff's account. But Plaintiff's account notes were not marked as exhibits until after Garbus provided the testimony in question. (Garbus Dep. 93:17–24). And if Garbus's lack of knowledge was inappropriate for a Rule 30(b)(6) deponent, Plaintiff should have raised this issue sooner—in a motion to compel additional discovery or for sanctions under Fed. R. Civ. P. 37. Moreover, Plaintiff provides no support for the proposition that a designation under Rule 30(b)(6) is itself evidence of knowledge.

[7] The Court emphasizes that it is not weighing Garbus's affidavit against his deposition testimony. Plaintiff correctly points out that doing so would be improper. (Opp. Br. at 15–16). Instead, the Court is simply acknowledging how far the evidence can reasonably take a fact finder. While the deposition testimony speaks hypothetically, FG&G's account notes rule out the possibility that Garbus reviewed certain statements. It is worth noting that, though possible, it would be a close call whether there was a genuine dispute of fact if the record contained only Garbus's deposition testimony.

at 14–15). The Court disagrees. Plaintiff does not cite any law in support of his argument. And the Court finds *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. 2002), particularly instructive. There, the Seventh Circuit held that an attorney's review of the debtor's file, consisting of the debtor's name, address, account number, account balance, and amount due were merely ministerial. *Id.* at 636. The attorney in *Nielson* also checked for errors or possible bankruptcies. *Id.* at 627. The Court described the attorney's review of this information as "checking the [creditor's] account data" and found that such review did not amount to an attorney's individualized assessment of the status or validity of the debt. *Id.* Like the attorney in *Nielson*, Garbus performed merely ministerial work of the kind debt collectors ordinarily perform. FG&G's computer system scrubbed Plaintiff's file for bankruptcy filings, military status, and death (A/N lines 1–3), and Garbus approved the collection letter after reviewing Plaintiff's initial file, which consisted of biographical information such as his name, address, and social security number, and, possibly, limited information concerning the debt (Garbus Dep. at 38:13–16 & 40:13–18). Thus, there is no genuine dispute of material fact that the collection letter's disclaimer was not false.

**IV.   Conclusion**

Based on the foregoing, Defendants' motion (D.E. No. 73) is GRANTED. An appropriate Order accompanies this Opinion.

Date:   August 13, 2021

*/s/Esther Salas*
Esther Salas, U.S.D.J.